Evans, J.
delivered the opinion of the Court.
The act of 1789 provides, that the debts due by any testator, or intestate, shall be paid in the following order, to wit, funeral and other expenses of the last sickness, charges of probale of will, and letters of administration, next debts due to the public, next judgments, mortgages and executions, the oldest first, next rent, then bonds, &c.' P. L. 494. So that rent is required to be paid next to judgments and executions, and before bonds and other obligations, and simple contract debts.
Rent is defined to be “ a certain profit issuing yearly oiit of lauds and tenements corporeal.” 2 Bl. Com. 41. This definition includes every species of rent, which can constitute a debt, without regard to the nature of the contract, under which it is reserved. It is equally vent, whether reserved on a lease under seal, or by parol. By the common law, in marshalling assets, rent is regarded as a specialty debt, and takes precedence of simple contract debts, although the rent may be reserved by parol, and is placed on the same footing with bonds; and the only difference made by the act of 1789, is to rank it before bonds. In Toller’s Law of Executors, 278, it is laid down, that “ although, in regard to rent, the lessor has a remedy, often more efficacious, in his own hands, by distraining; yet, between a debt by obligation, and a debt by covenant for a sunl certain, ov for damages on a breach of covenant, and a debt for rent, there is no distinction of rank: they are all debts of the ^ame degree. Nor does it make any difference whether the rent be reserved by lease in writing, or by parol: for in the latter case the rent arises equally from the profits of the land, and is regarded as a debt by specialty. Nor is the nature of the debt changed by the determination of the lease: the con *530 tract remains in the realty, although the right of distress he gone.”
Its eems to me, therefore, that the nature, or rank, of the debt due for rent, does not depend on the evidence which establishes it, or on the existence or determination of the right of distress. But even if it did depend on the right of distress, this case would not be varied. This right is not restricted to one year, as seems to have been the opinion of the Circuit Court. In the case of Price v. Limehouse, 4 M‘C. 544, where a tenant had leased premises for six years and a half, and gave his bond for the payment of the rent in gross, it was held, “ that the landlord might, notwithstanding, distrain for rent, the bond not having been paid.” And in Blake v. De Liesseline, reported in the samé book, the Court say, “ there does not appear to be any fixed period, after which a person may not distrain for rent in arrear. In the case of Braithwaite v. Cooksey, 1 H. Bl. 465, it was held, that a person might distrain for all the rent due for six years: in the case of Ex Parte Grove, 1 Atk. 104, the party distrained for twelve years’ rent, and although it was disallowed on another ground, it did not appear that the length of time would have been a bar.” 4 M‘C. 500. Upon the whole, it seems to me there is no foundation for the distinction taken by the Circuit Court, between rent due for the last, and the preceding years ; and it is the opinion of this^Court, that for the whole amount of rent due the plaintiff for seven years, he is intitled to be paid next to judgments, mortgages, and executions, and before bonds, other obligations, and simple contract debts. As a consequence of this, the charge in the defendant’s account, for money paid Ford for rent, will take the same rank as the plaintiff’s demand.
Besides this point, it is thought by this Court, that the Circuit Court was wrong on another legal question, which constitutes one of the defendant’s grounds of appeal. The report of the Circuit Judge states: “ J directed the jury to charge the defendant with the value of the negro girl Doll, and the horse. I told them the proof was satisfactory, that they belonged to the intestate ; and that the defendant having found them in the intestate’s possession, and failed to inventory, and return them, had assumed the responsibility of shewing, when called on, that his intestate had no right to them.” I think the rule is here *531 laid down too broadly. It is very clear, that the administrator should have inventoried all the estate of his intestate; but I cannot conceive, that he was bound to inventory all property that was in his intestate’s possession, on the peril of being able after a lapse of ten or fifteen years, to shew that property, not inventoried, belonged to another. Executors and administrators are bound by their oaths to performs all their duties. It is their duty to collect, and faithfully to administer the assets, to pay the debts, and account for the residue to the legatees, or distributees. In the discharge of this duty they are to ac't honestly, and faithfully. This negro.and horse were in Love’s possession at his death. When the defendant took possession of the estate, they were claimed by the children of Love. Now whether they did belong to the children, was a matter, which I cannot conceive the administrator was bound to contest at ail events. Of necessity, some discretion must be vested in him; and it is not to be presumed, that he would surrender the property, unless he had good reason to believe, that it did not belong to his intestate’s estate. To have done so would have been a fraud. It would have been a -wilful dereliction of duty, which ought not to be presumed. If an executor or administrator find an old bond amongst, his testator’s, or intestate’s papers, must he of necessity incur the expense of a law suit, or take upon himself the burthen of proving it paid, when called to settle the estate twenty years after 1 I apprehend not. He is invested with discretion, and is only chargeable like other agents having discretionary powers, for a negligent use, or a wilful, or corrupt abuse, of his discretion.
It does not appear, clearly, in what way these children of Love derived their title to this property, but I think it clearly deducible from the facts stated, that they claimed under voluntary gifts from Love himself: and, perhaps, the opinion of the presiding Judge was founded on the conclusion, that as Love was insolvent, these gifts were fraudulent, and void as to creditors. If they did derive their title in this way, and Love did give them the negro and the horsej then I take it to be very clear, that these gifts, though void as to creditors, could not be disputed by Love’s administrator. In the case of Shelton v. Crosby, decided in this Court, the law is very clearly laid down to this effect. “ If it be true,” says Judge Johnson, who deliver *532 ed the opinion of the Court in that case, “ that the intestate was-in debt, and insolvent, and that a voluntary gift is void, as a fraud on creditors, there is no doubt that, as creditors, they would be intitled to relief: but the plaintiff sues as administra-trix, and in that character represents the person of her intestate, and is estopped to say he had committed a fraud.” All the powers of executors and administrators are derivative, and if the donor could not dispute his own voluntary gift, on the ground that it operated a fraud on his creditors, his executor or administrator could not. If, therefore, in this case, Love had given this property to his children, the defendant could not avoid the gift for the benefit of the creditors. They might do so, but he could not. But it was competent for the administrator to contest with the donees, whether the gift ever had been made; and this he should have done, unless satisfied that the existence of the gift could have been established by evidence. If he acts honestly, and surrenders the property, he is not answerable ; but if he is guilty of negligence, or collusion, or fraud, he is answerable out of his own estate. No injury can result to the creditors from this principle. They are not estop-ped irom asserting their rights, and the Court of Equity can afford ample relief.
The positions, here laid down, are not intended to intimate any opinion on the facts of this case, but only to present the opinion of the Court, on the legal principles involved in this case. There seem to be no other points, on which any opinion is necessary to be expressed. On all the others, I think the charge of the Circuit Court unexceptionable. A new trial must, however, be awarded on the grounds which have been discussed.
Colcock, J. and Johnson, J. concurred.
Motion granted.